IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANNIE L. NORMAN,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )  CIVIL ACTION NO. 04-00247-P-B
                                    )
JO ANNE B. BARNHART,                )
Commissioner of                     )
Social Security,                    )
                                    )
        Defendant.                  )

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits and supplemental security income benefits.  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The parties waived oral argument.  Upon careful consideration of the administrative record and the parties' arguments as raised in their memoranda, the undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED.**

## I.  Procedural History

Plaintiff, Annie L. Norman ("Plaintiff"), protectively filed applications for disability insurance benefits and supplemental security income benefits on January 28, 2002, alleging that she

has been disabled since January 24, 2002 due to diabetes mellitus, hypertension, a heart problem and breast cancer. (Tr. 48-51, 55, 68, 84, 277, 282-285). Plaintiff's applications were denied on June 26, 2002, and she filed a Request for Hearing on July 31, 2002.[1] (Id. at 35-36, 42, 286-287). Administrative Law Judge ("ALJ") R.G. Goosens conducted a hearing on November 12, 2002, which was attended by Plaintiff and her representative.[2] (Id. at 293-306). On December 6, 2002, ALJ Goosens entered a decision wherein he found that Plaintiff has the severe impairments of diabetes mellitus and status post cellulitis versus lymphedema following ductal carcinoma lumpectomy of the right breast,[3] and that she is capable of performing her past relevant work as a car parts worker. (Id. at 15-27). On February 21, 2004, Plaintiff's request for review was denied by the Appeals Council thereby making the ALJ's decision the final decision of the Commissioner of Social Security. (Id. at 4-6). The parties agree that this case is now ripe for review and is

---

[1]The reconsideration stage was eliminated from this case pursuant to testing modifications to the disability determination procedures. 20 C.F.R. §§ 404.906, 416.1406.

[2]Plaintiff's representative at the administrative hearing was a non-lawyer who indicated that she had previously appeared at administrative hearings on behalf of other claimants. (Tr. 295-296).

[3]The ALJ also considered hypertension, a heart problem and depression as possible severe impairments, but concluded that these did not result in any significant work-related limitations. (Tr. 26).

properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  **Background Facts**

Plaintiff was born March 17, 1953 and was forty-nine years old at the time of the administrative hearing on November 12, 2002. (Tr. 297). Plaintiff has a 12th grade education and past relevant work experience as a car parts worker, janitor and cook. (Id. at 56, 61, 69-72, 297). Plaintiff reported that she became unable to work on January 24, 2002 due to diabetes mellitus, hypertension, a heart problem and breast cancer. (Id. at 48-51, 55, 68, 84, 245, 277, 282-285). Plaintiff testified that she stopped working because of arm irritation and because she could no longer meet the lifting requirements for the position. (Id. at 298). Plaintiff added that she could no longer use her right arm due to pain and swelling, and that she kept her arm bandaged. (Id. at 298-299, 302-304). Plaintiff testified that she is undergoing physical therapy for right arm problems, that she has difficulty lifting, bending and closing her fingers, and that she uses her left arm as much as possible. (Id. at 55, 68, 298, 301-304). Plaintiff testified that she is not taking prescribed medication for her alleged arm impairment. (Tr. 299).

Additionally, Plaintiff testified that as a result of her

3

diabetes, she suffers from weakness, dizziness, an inability to stand for long periods of time, and burning sensations in her feet. (Id. at 299). Plaintiff further reported that due to her heart condition, she experiences shortness of breath while walking and is unable to do much lifting or walking. (Id. at 68). Plaintiff also reported that she suffers from swelling in her legs. (Id. at 97).

With respect to her household tasks, Plaintiff reported that due to her pain, she does very little walking, cooking, driving or household chores; however, she is able to care for most of her personal needs without assistance,[4] shop for groceries once a week, do laundry once a week, and sweep her house once a week. (Id. at 78-85, 88-90). Plaintiff reported that she watches television, reads, sits on the porch, walks, rides the bus, goes to church, visits family and friends once or twice a month, occasionally goes to cookouts with family, and talks to friends on the telephone daily. (Id. at 80-81, 89-90, 248). Plaintiff testified that her daily activities include preparing breakfast, walking outside around the house and attempting to sweep a little with her left arm. (Tr. 302-303). Plaintiff reported that she can only stand for 30 minutes, walk for 20 minutes and

---

[4]Plaintiff indicated that she has difficulty bathing and combing her hair because of pain in her arm, shoulder, legs and feet. (Tr. 79, 81-82, 88-89, 248).

4

sit for 45 minutes, at a time.  (Id. at 78).

The ALJ determined that Plaintiff has the severe impairments of diabetes mellitus and status post cellulitis versus lymphedema following ductal carcinoma lumpectomy of the right breast, that Plaintiff retained the residual functional capacity to perform light work and that she could perform her past relevant work as a car parts worker.  (Id. at 21-27).

### III.  Issues on Appeal[5]

 A. Whether the ALJ erred in the weight afforded the opinions of Plaintiff's treating physician?

 B. Whether the ALJ erred in discounting Plaintiff's subjective complaints of pain?

 C. Whether the ALJ erred in failing to make findings regarding the physical demands of Plaintiff's past relevant work?

 D. Whether this case should be remanded for consideration of new evidence?

### IV.  Analysis

#### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  This Court's review is limited to determining: 1) whether the decision of the Secretary is

---

[5]Plaintiff filed a Motion for Remand seeking to have this case remanded, pursuant to sentence six of § 205(g), for consideration of new evidence. Although Plaintiff has not listed the new evidence as an issue in this case, the undersigned has included the new evidence as a issue for consideration since the Motion is still pending before the Court.

supported by substantial evidence, and 2) whether the correct legal standards were applied.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[6]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983)(holding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

**B.   <u>Discussion</u>**

An individual who applies for Social Security disability benefits or supplemental security income must prove their

---

[6]This court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is
defined as the "inability to do any substantial gainful activity
by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.
§§ 404.1505(a), 416.905(a).   The Social Security regulations
provide   a   five-step   sequential   evaluation   process   for
determining if a claimant has proven his or her disability.   20
C.F.R. §§ 404.1520, 416.920.[7]

In the case sub judice, the ALJ applied the usual five-step
process for evaluating disability claims, and found that

---

[7]The claimant must first prove that he or she has not engaged in
substantial gainful activity.  The second step requires the claimant to prove
that he or she has a severe impairment or combination of impairments. If, at
the third step, the claimant proves that the impairment or combination of
impairments meets or equals a listed impairment, then the claimant is
automatically found disabled regardless of age, education, or work
experience.  If the claimant cannot prevail at the third step, he or she must
proceed to the fourth step where the claimant must prove inability to perform
their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir.
1986).  In evaluating whether the claimant has met this burden, the examiner
must consider the following four factors: 1) objective medical facts and
clinical findings; 2) diagnoses of examining physicians; 3) evidence of pain;
4) the claimant's age, education and work history.  Id. at 1005.  Once a
claimant meets this burden, it becomes the Commissioner's burden to prove at
the fifth step that the claimant is capable of engaging in another kind of
substantial gainful employment which exists in significant numbers in the
national economy, given the claimant's residual functional capacity, age,
education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir.
1985).  If the Commissioner can demonstrate that there are such jobs the
claimant can perform, the claimant must prove inability to perform those jobs
in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th
Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)
(citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability, and that she suffers from diabetes mellitus and status post cellulitis versus lymphedema following ductal carcinoma lumpectomy of the right breast. (Tr. 26, Finding 5). Then, the ALJ found that these impairments, when considered individually, or in combination, do not meet or equal the criteria listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1. (Id., Finding 7). Proceeding to the fourth step, the ALJ determined that Plaintiff is capable of performing her past relevant work as a car parts worker. (Id. at 27, Finding 10).

## 1. __Plaintiff's treating physician__

Plaintiff argues that the ALJ erred in the weight afforded the opinions of her treating physician, Dr. Safwan Jaalouk, M.D. ("Dr. Jaalouk"). Specifically, Plaintiff avers that the ALJ relied upon medical evidence submitted by Dr. Jaalouk for a period two (2) years prior to her alleged onset of disability as opposed to Dr. Jaalouk's treatment records of March 2002, which indicate severe nonischemic cardiomyopathy, and include a fair to poor prognosis. Based upon a review of the record evidence, the undersigned finds that the ALJ did not err in the weight afforded Dr. Jaalouk's opinions and findings. Indeed, contrary to Plaintiff's assertions, the ALJ's findings are fully supported by Dr. Jaalouk's complete medical records. In no

8

instance did Dr. Jaalouk note any functional limitations in
Plaintiff's ability to work.  Rather, as noted by the ALJ, upon
examination of Plaintiff on March 14, 2002, mere days before Dr.
Jaalouk indicated that she had a "fair to poor prognosis" (Tr.
218), he noted that her condition was being treated with
medications, and noted that she denied orthopnea, PND or leg
swelling.  (Id. at 219).  He also found that Plaintiff had clear
lungs, regular rate and rhythm, and no murmur or rub, no masses
or edema.  (Id.)  Dr. Jaalouk noted that Plaintiff's
hypertension was under control and he recommended that she
continue her medication and return for a follow-up visit on an
annual basis.  (Id. at 20, 218, 219).  Moreover, while mere days
later Dr. Jaalouk listed Plaintiff's future prognosis as "fair
to poor," he also noted that she had a "good response" to her
medication, and he did not assign her any functional
limitations.  (Id. at 218).  Indeed, the only functional
limitations of record are the findings of Dr. Roy Buchsbaum,
M.D. ("Dr. Buchsbaum"), who opined that Plaintiff should not use
her arms for repetitive motions against objects weighing more
than twenty (20) pounds.  (Id. at 275-276).  Accordingly, the
ALJ was correct in not assigning significant weight to Dr.
Jaalouk's fair to poor prognosis in light of the objective
medical evidence of record, including Dr. Jaalouk's own

treatment notes.  See, e.g., Crawford v. Comm'r of Soc. Sec.,
363 F.3d 1155, 1159-1160 (11th Cir. 2004); Phillips v Barnhart,
357 F.3d 1232, 1240-1241 (11th Cir. 2004) (stating that an ALJ
may properly discount the opinion of a treating physician if the
opinion is conclusory, inconsistent with his or her own medical
records, or if the evidence supports a contrary finding).

   2.  **Plaintiff's credibility**

   Plaintiff argues that the ALJ erred by improperly
discrediting her subjective symptoms.  According to Plaintiff,
the ALJ erred by failing to apply the three-part pain standard
required when analyzing a claimant's subjective symptoms.  With
respect to complaints of pain and other subjective symptoms, a
claimant must show: 1) evidence of an underlying medical
condition; and 2) either a) objective medical evidence
confirming the severity of the alleged symptoms or b) that the
objectively determined medical condition can reasonably be
expected to give rise to the alleged symptoms.  Wilson v.
Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v.
Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Social Security
Ruling 96-7p: Titles II and XVI: Evaluation of Symptoms in
Disability Claims: Assessing The Credibility of an Individual's
Statements, 1996 WL 374186 (S.S.A.), requires the ALJ to
determine whether the medically determinable impairment could

10

reasonably give rise to the symptoms alleged.  In <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (citations omitted), the Eleventh Circuit explained:

> A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court . . . . A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case . . . . While an adequate credibility finding need not cite "particular phrases or formulations . . . broad findings that [a claimant] lacked credibility and could return to her past work alone are not enough to enable us to conclude that [the ALJ] considered her medical condition as a whole." . . . . If proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." . . . . Explicit credibility findings are "necessary and crucial where subjective pain is an issue."

<u>See also</u> <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991). Additionally, when making a credibility determination, the ALJ may consider a claimant's daily activities. <u>Macia v. Bowen</u>, 829 F.2d 1009, 1012 (11th Cir. 1987). <u>See also</u> 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that "[f]actors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities[]"). Moreover, "[t]he credibility of witnesses is for the Secretary [Commissioner] to determine, not the courts." <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1219 (11th Cir. 1991) (citing <u>Kelly v. Heckler</u>, 736 F.2d 631, 632

(11th Cir. 1984)).

Despite Plaintiff's averment that "[t]here is no indication whatsoever that the ALJ applied [the three-part pain] standard," the undersigned disagrees.  The ALJ determined that while evidence of underlying medical conditions existed, the objective medical evidence did not confirm the severity of the pain and other symptomatology alleged by Plaintiff.  In the following colloquy, the ALJ explained:

> [w]hile a portion of the claimant's testimony did not directly relate to matters which were by themselves material to a specific finding of credibility, nonetheless certain aspects of the case . . . were central to the determination whether the claimant has had limitations which would have likely precluded the ability to conduct all substantial gainful activity, or would have led to the same conclusion in view of relevant medical-vocational factors.

(Tr. 18).  The ALJ further explained that:

> [d]uring the hearing, I was observant of the claimant's demeanor, candor, and consistency of allegations as well as description of activities.  I also closely reviewed all the exhibits before me and was aware of the frequency, scope, and type of medical treatment and findings involved.  All of these considerations were taken into account in finding that there was a lack of credibility necessary to establish disability for this individual claimant.

(Id.)  The ALJ observed that treatment notes from Dr. John R. Russell, M.D., ("Dr. Russell"), indicated that Plaintiff's cancer did not reoccur and she was repeatedly described as doing well during routine follow-up exams.  (Id. at 24).  (See id. at

12

146, 148, 150-153, 156, 160, 163, 168, 176-177, 179, 181, 183, 190).  Similarly, although treating physician Dr. Pamela Gibbs, M.D., ("Dr. Gibbs"), noted during various prior visits that Plaintiff's diabetes was not well controlled, during her final visit on February 12, 2002, her prescriptions were refilled and no problems were noted.  (Id. at 192-216).

Additionally, the ALJ observed that although Plaintiff was diagnosed with lymphedema, upon examination on January 25, 2002, Dr. Buchsbaum indicated that her lymphedema was "relatively subtle," and encouraged her to simply use her left arm or apply for a position that required less weight on her right arm.  (Id. at 24).  (See also Tr. 143-144).  Dr. Buchsbaum further reported that "there [was] no physical exam findings that would suggest thrombophlebitis.  Her edema is fairly mild and her tenderness is quite generalized."[8]  (Id. at 144).  The ALJ also noted that Dr. Buchsbaum's August 27, 2002 report, which was submitted by Plaintiff during the hearing conducted on November 12, 2002 and which Plaintiff testified that she agreed with,[9] contained

_____

[8] Inflammation and clotting in veins.  The Merck Manual - Second Home Edition, Sec. 3, Ch. 36, http://www.merckhomeedition.com/home.html.

[9] Specifically, when question by the ALJ regarding Dr. Buchsbaum's report, Plaintiff responded as follows:

Q    Your doctor here said avoidance of repetitive arm motion
     against resistance of more than 20 pounds.
A.   I don't –
Q.   Does that sound correct?

similar findings.  (Id. at 24, 275-276, 296-297, 304).  In the August 27, 2002 report, in addition to recommending four weeks of comprehensive physiotherapy, Dr. Buchsbaum opined that Plaintiff should avoid "repetitive arm motion against resistance of more than twenty pounds[.]"  (Id. at 275).  (See also id. at 192).  Similarly, as noted supra, although Dr. Jaalouk diagnosed Plaintiff with nonischemic cardiomyopathy and obesity, upon final examination on March 14, 2002, he noted that her condition was being treated with medication, that she denied orthopnea, PND or leg swelling, that she had no masses or any edema and that her hypertension was under control; and he recommended that she continue her medication and return for a follow-up visit on an annual basis.  (Id. at 219).  Aside from the limitations noted by Dr. Buchsbaum, no other physician noted any functional limitations on Plaintiff's ability to work, and none indicated that she had pain present to such an extent to be distracting or disabling.

In addition to the medical evidence of record, the ALJ also relied upon Plaintiff's reported daily activities.  (Tr. 23).

_____

    A.    Yes.
    Q.    And that's what you're expected to do avoid lifting more
          than 20 pounds?
    A.    Yes.

(Tr. 304).

14

Specifically, Plaintiff reported that she is generally able to care for her personal needs without assistance, watch television, read, sit on the porch, walk, ride the bus, go to church, visit family and friends once or twice a month, occasionally go to cookouts with family, talk to friend on the telephone daily, make her bed twice a week, do laundry once a week and sweep her house once a week. (Id. at 78-92, 248). Additionally, Plaintiff testified that her daily activities include preparing breakfast, walking outside around the house and attempting to sweep a little with her left arm. (Id. at 302-303). Moreover, notwithstanding Plaintiff's alleged disabling pain, she testified that she was not taking prescribed medication for her alleged arm impairment. (Id. at 299). Based on the foregoing, the undersigned finds that the ALJ's determination, that Plaintiff's allegations regarding pain were not fully credible, is supported by substantial evidence.

### 3.  **Plaintiff's past relevant work**

Plaintiff also argues that the ALJ erred by failing to make findings regarding the physical demands of her past work, and her ability to perform the associated duties in light of her impairments. To that end, Plaintiff avers the ALJ reached his decision regarding her ability to perform her past relevant work by rejecting both the opinions of Drs. Jaalouk and Buchsbaum as well as her testimony regarding her limitations. The

undersigned, however, disagrees.

Although Plaintiff bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner has an obligation to develop a full and fair record. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). Social Security Ruling 82-61 recognizes three possible tests for determining whether a claimant retains the capacity to perform his or her past relevant work:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.
> ...
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
> ...
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.

Social Security Ruling 82-61: Titles II and XVI: Past Relevant Work--the Particular Job or the Occupation as Generally Performed 1982 WL 31287 (S.S.A.).[10]  An individual will be found

---

[10]As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge." Id.  Additionally, the Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy. Id.

"not disabled" when it is determined he or she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the past relevant occupation as generally required by employers throughout the national economy. Id. See also Social Security Ruling 82-62: Titles II and XVI: <u>A Disability Claimant's Capacity to Do Past Relevant Work, In General</u>, 1982 WL 31386 (S.S.A.). See also 20 C.F.R. § 404.1545.

The ALJ has a duty to develop the record and establish the exertional and nonexertional requirements of the claimant's past relevant work, either as the claimant actually performed the work or as the work is performed in the national economy. <u>Lucas v. Sullivan</u>, 918 F.2d 1567, 1574 (11th Cir. 1990); <u>Schnorr</u>, 816 F.2d at 581 (finding that the Secretary is obligated to fully develop the record regarding the duties and responsibilities of claimant's past relevant work). The ALJ may meet this obligation by inquiring of the claimant as to duties and responsibilities at the hearing and/or by review of that part of the record which includes claimant's statements of job responsibilities, both exertional and non-exertional, for the claimant's past relevant work. <u>Id</u>. The ALJ must consider the duties and requirements of the past work, make findings with

17

regard to same in the decision, and then, based upon those findings, compare the claimant's residual functional capacity to the job description.  Id.

As noted supra, the ALJ determined that the medical evidence revealed that Plaintiff suffers from diabetes mellitus and status post cellulitis versus lymphedema following ductal carcinoma lumpectomy of the right breast, and that she is capable of performing her past relevant work as a car parts worker.  (Tr. 15-27).  While Plaintiff argues that the ALJ failed to consider the job duties of her past relevant work and her ability to perform same, the undersigned finds that the record indicates otherwise.  Indeed, in reaching his decision, the ALJ explained:

> The undersigned notes that Exhibit 1E, page 3, was completed by the claimant at the time of the filing of her applications.  This exhibit sets forth in detail a description of the claimant's past work as a car parts worker.  Further, the claimant completed a work history report, Exhibit 4E, pages 2 and 3, which revealed that that job did not require greater than light work.

(Tr. 25).  The ALJ continued, stating that "[i]n carefully comparing the claimant's residual functional capacity as stated herein with her own description of the job of car parts worker, it is concluded that the demands of the claimant's past job of car parts worker did not exceed her residual functional capacity."  (Id.)  Specifically, Plaintiff described her job as

18

requiring: assembly of parts; use of machines, tools or equipment; no technical knowledge or skills; no writing or completing reports, except to track production; no supervision of other people; walking two (2) hours; standing five (5) hours; sitting forty (40) minutes; climbing one (1) hour; handling, grabbing or grasping big objects eight (8) hours; bending her legs; and lifting a maximum of twenty (20) pounds. (Id. at 56, 70-71). As noted supra, the only functional limitation of record is the finding of Dr. Buchsbaum, in which he opined that Plaintiff should not use her arms for repetitive motions against objects weighing more than twenty (20) pounds. (Id. at 275-276). Given the limitation imposed by Dr. Buchsbaum, and Plaintiff's description of the car parts worker position, the ALJ was correct in concluding that she is capable of performing her past relevant work as a car parts worker. This is particularly true as the record is totally devoid of any medical evidence which suggests that Plaintiff is unable to perform the car parts worker position, as described by her.

### 4. New Evidence

As noted supra, in connection with her petition, Plaintiff filed a motion seeking to have this case remanded pursuant to sentence six of § 205(g) and § 1631(c)(3) of the Social Security Act. (Doc. 4). In her motion, Plaintiff argues that the March

11, 2004[11] opinions of Dr. John R. Russell, M.D. ("Dr. Russell") in a Physical Capabilities Evaluation and Clinical Assessment of Pain form, constitute new, non-cumulative material evidence which warrants this matter being remanded to the Commissioner of Social Security for consideration.   Specifically, Plaintiff avers that the evidence is new and non-cumulative because the forms were completed after the Appeals Council denied Plaintiff's request for review on February 21, 2004; thus, the forms are not a part of the administrative record, and no similar evidence was introduced in the administrative record. Additionally, Plaintiff argues that there is a reasonable possibility that the evidence would change the administrative result, as it contradicts the findings of the Administrative Law Judge regarding the severity of Plaintiff's problems and the extent of her limitations.   Plaintiff further argues that good

---

[11]In the Physical Capabilities Evaluation form, Dr. Russell opined that in an eight (8) hour day Plaintiff can: sit two (2) hours at any one time, and a maximum of two (2) hours; stand/walk thirty (30) minutes at any one time, and a maximum of thirty (30) minutes; lift/carry a maximum of ten (10) pounds occasionally, and up to five (5) pounds frequently on a regular and sustained basis; use her hands for repetitive action such as simple grasping and fine manipulation, but not for pushing/pulling; use feet for repetitive movements; occasionally bend and reach, but never squat, climb or crawl.  (Doc. 4 at Ex. 1). Dr. Russell further opined that Plaintiff needs to rest or lie down, and elevate her legs above her heart, several times a day.  (<u>Id</u>.)  In the Clinical Assessment of Pain form, Dr. Russell concluded that Plaintiff's "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work", and greatly increased by physical activity "to such a degree as to cause distraction from task or total abandonment of task." (<u>Id</u>.)  Additionally, Dr. Russell opined that the impact of any side effects from Plaintiff's prescribed medication would not be to such a degree as to create serious problems in her ability to perform work activity.  (<u>Id</u>.)

cause exists for her failure to present the evidence because it did not exist at the time of the administrative proceedings and was not requested and/or obtained until after she retained her current attorney, which was subsequent to the AC's denial of her request for review.

A sentence six remand may be ordered in only two situations: where the Commissioner "requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Shalala v. Schaefer, 509 U.S. 292, 292, n.2 (1993) (citations omitted). In Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. den., 52 U.S. 1124 (1999), the Eleventh Circuit held that to warrant remand for consideration of new evidence, a claimant must establish that: 1) new, non-cumulative evidence exists, 2) the evidence is material, that is, relevant and probative so that a reasonable possibility exists that it would change the administrative result; and 3) good cause exists for failure to incorporate the evidence into the record in the proceedings before the ALJ. See also Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001); Sullivan v. Apfel, 2000 WL 1568330, *8 (S.D. Ala. Oct. 2, 2000). The undersigned finds that the Physical Capabilities Evaluation and Clinical Assessment of Pain forms (Doc. 4) completed by Dr. Russell in March 2004 are

neither material nor probative, and moreover, they do not create
a reasonable possibility that the administrative outcome would
be changed.   Although Dr. Russell reports significant functional
limitations and restrictions, the undersigned notes that there
is nothing in the forms that indicate that they relate to the
time period for which benefits were denied.   In other words,
while the forms arguably evidence deterioration of Plaintiff's
health, they do not provide any probative information regarding
her medical condition as it existed during the time period for
which benefits were denied.   Indeed, while the record reflects
that Dr. Russell treated Plaintiff for a number of years,
commencing January 1995, the administrative record reflects that
December 2001 was the last time she was seen by Dr. Russell.
(Tr. 145-191).   During the December 2001 examination of
Plaintiff, Dr. Russell did not note any restrictions or
limitations with respect to Plaintiff's ability to work, and
Plaintiff actually reported that she "has had no problems with
her right upper extremity." (Id. at 146-147).   Additionally,
upon physical examination of Plaintiff's right upper extremity,
Dr. Russell concluded that she demonstrated no hand or finger
edema; good wrist mobility; pronation and supination within
normal limits; no decreased range of motion in flexion and
extension of the forearm about the elbow; fullness of the

proximal and cubital region; no erythema or increased temperature sensation; no palpable adenopathy in the right brachium, right axilla or right supraclavicular area; and no tenderness in the bursa of her right shoulder. (<u>Id</u>. at 146). Although Dr. Russell indicated edema in the area, he concluded that Plaintiff's tenderness was less than previously noted and suggested that she see a lymphedema specialist and undergo instruction in the use of a stocking as well as in a wrap technique and chest and arm massage. (<u>Id</u>. at 145-147). Furthermore, Dr. Russell's treatment notes indicate that Plaintiff's cancer did not reoccur after treatment in 1995, and she was repeatedly described as doing well during her routine follow-up examinations. (<u>Id</u>. at 143-191).

Based on the forgoing, the undersigned finds the Physical Capabilities Evaluation and Clinical Assessment of Pain forms completed by Dr. Russell on March 11, 2004 are not material and that a reasonable possibility does not exist that this evidence would have changed the ALJ's decision since the forms did not relate to the time period in question. Moreover, it is well established that a remand will not be granted under § 405(g) if the new evidence only shows a "subsequent deterioration of the previously nondisabling condition." <u>Szubak v. Secretary of Health & Human Servs.</u>, 745 F.2d 831, 833 (3rd Cir. 1984). <u>Accord</u>

<u>Jones v. Callahan</u>, 122 F.3d 1148, 1154 (8th Cir. 1997); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1058 (5th Cir. 1987).  Based on the foregoing, the undersigned finds that the Physical Capabilities Evaluation and Clinical Assessment of Pain forms completed by Dr. Russell in March 2004 are not material; thus, Plaintiff's motion seeking a sentence six remand should be **DENIED**.

**V.**  **Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits and supplemental security income benefits be **AFFIRMED**. It is further recommended that Plaintiff's motion for a sentence six remand be **DENIED**.

The attached sheet contains important information regarding objections to this <u>report and recommendation.</u>

**DONE** this **22nd** day of **November, 2005.**

       **/s/ SONJA F. BIVINS**      
       **UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION <u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**.    Any   party   who   objects   to   this recommendation or anything in it must, within ten days of the date   of   service   of   this   document,   file   specific   written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time  is  established  by  order.    The  statement  of objection   shall   specify   those   portions   of   the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the  objection,  a  brief  setting  forth  the  party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original  brief  submitted  to  the  magistrate  judge, although a copy of the original brief may be submitted or  referred  to  and  incorporated  into  the  brief  in support of the objection.  Failure to submit a brief in  support  of  the  objection  may  be  deemed  an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.  **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  /s/ SONJA F. BIVINS  
**UNITED STATES MAGISTRATE JUDGE**